**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------×
MARY WENZE,

                        *Plaintiff,*                  **19 CV 663**

       *v.*

                                              **COMPLAINT**

HCMC LEGAL, INC., *and* HC2, INC.*, d/b/a* HIRE
COUNSEL,

                        *Defendants.*
-----------------------------------------------------------------------×

       Plaintiff Mary Wenze, by her counsel, The Harman Firm, LLP, alleges for her Complaint

against Defendants HCMC Legal, Inc., and HC2, Inc., d/b/a Hire Counsel (collectively

"HCMC") as follows:

## PRELIMINARY STATEMENT

       1.      On June 8, 2008, HCMC hired Ms. Wenze.  Over the course of her employment,

HCMC restructured its executive team multiple times and, in March 2017, Ms. Wenze—

concerned with the direction the company was heading—negotiated a severance agreement

under which she would receive six months' severance pay upon her termination, which HCMC

agreed to and the Chief Executive Officer ("CEO") at the time, Lynn Mestel, executed.  Later

that year, HCMC hired a new Chief Financial Officer ("CFO"), Charlie Nelson, who served as

Ms. Wenze's direct superior.  Almost immediately, Mr. Nelson began to target and discriminate

against Ms. Wenze because of her sex and age and, ultimately, after terminating many women

above the age of 40, HCMC fired Ms. Wenze for unsubstantiated reasons, including, but not

limited to, violating policies by failing to obtain approval for paid time off.  Moreover, HCMC

has failed to pay Ms. Wenze her agreed-upon severance.

2.      Ms. Wenze seeks damages and costs against HCMC for discriminating against her based on her gender by paying her less than similarly-situated men, in violation of the Fair Labor Standards Act ("FLSA"), as amended by the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), and the Equal Pay Provision of the New York State Labor Law ("NYLL"), N.Y. Lab. Law § 194.

3.      Ms. Wenze also seeks damages and costs against HCMC for discriminating against her based on her age (60) and sex by wrongfully terminating her employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*

4.      Ms. Wenze also seeks damages and costs against HCMC for breaching Ms. Wenze's severance agreement by failing to pay it, in violation of the New York common law.

5.      Ms. Wenze also seeks damages and costs against HCMC for breach of good faith and fair dealing, in violation of New York common law.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PREREQUISITES

6.      Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under FLSA, as amended by the EPA.

7.      Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYLL § 194, NYCHRL, and New York common law claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

8.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## COVERAGE UNDER FLSA

9.      At all times relevant hereto, Ms. Wenze was HCMC's "employee" within the meaning of the FLSA.

10.      At all times relevant hereto, HCMC was Ms. Wenze's "employer" within the meaning of the FLSA.

11.      HCMC was, and continues to be, an "employer" within the meaning of the FLSA.

12.      At all times relevant hereto, HCMC was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA, as it generates revenue by legal recruitment, law management, and consulting.

13.      Upon information and belief, HCMC's annual gross revenue was in excess of $500,000 during the relevant time period.

14.      At all times relevant hereto, Ms. Wenze was "engaged in commerce" and subject to individual coverage of the FLSA.

## TRIAL BY JURY

15.      Plaintiff respectfully requests a trial before a jury.

## PARTIES

16.      Plaintiff, at all times relevant hereto, was and is a resident of Suffolk County in the State of New York.

17.      Upon information and belief, at all times relevant hereto, Defendants were and are a foreign business corporation organized under the laws of the State of New York with their principal executive office located at 360 Lexington Ave, 11th Floor, New York, New York 10017.

## STATEMENT OF FACTS

18.     On June 8, 2008, HCMC hired Ms. Wenze as a Chief Financial Officer ("CFO"), compensating her with an annual salary of $162,000.

19.     In September 2013, HCMC hired a new, male CFO compensating him with a salary of $200,000 with a potential for a large bonus—at least $40,000 more than HCMC had paid Ms. Wenze for the past five years.

20.     To make room for this new CFO, HCMC demoted Ms. Wenze to the position of Controller, tasking her with creating monthly financials, handling tax audits, and supervising the staff, for which it paid her a decreased salary of $140,000 per year.

21.     Yet Ms. Wenze continued, during his tenure (which only lasted six months, at which point he was fired for nonperformance) and after to do all the work of a CFO, including, but not limited to, preparing financials, managing staff, dealing with the bank and auditors, and tax return work.

22.     In October 2014, Ms. Wenze spoke to the current CEO and told her that she could not continue doing CFO-level work without being compensated for her work.

23.     As a result of this conversation, HCMC raised Ms. Wenze's salary to $162,000 (the salary she was receiving when she was the CFO in 2008), but kept her in the position as Controller, despite the fact that she continued to do work above her title.

24.     In December 2014, HCMC hired a male CFO, Edward Imparato, whom HCMC compensated at a much higher salary ($275,000) than Ms. Wenze had ever received.

25.     In March 2017, The Private Equity Group (Long Point Capital or LPC), which bought HCMC in 2011, began restructuring its executive team.

26.     Concerned about the company's direction and her continued employment with HCMC, Ms. Wenze negotiated a severance agreement (the "Agreement") under which she would receive six months of severance pay upon her termination, which HCMC agreed to and the CEO at the time, Lynn Mestel, executed.

27.     As part of its restructuring process, HCMC hired a new CEO, Joan Davison, and a new CFO, Charlie Nelson, who served as Ms. Wenze's direct supervisor.

28.     Mr. Nelson, however, had the skill set of a Controller, not a CFO.

29.     He was significantly less qualified for the position than Ms. Wenze, who had company-specific knowledge from her 10-year tenure at HCMC, including experience as HCMC's CFO for six years, and experience working directly under the previous CFO, Mr. Imparato, who entrusted Ms. Wenze with many CFO responsibilities.

30.     Yet, almost immediately upon his hire, Mr. Nelson excluded Ms. Wenze from meetings, changed and took away her job responsibilities, and, along with human resources, repeatedly complained about her salary.

31.     It was clear to Ms. Wenze that Mr. Nelson has had an animus against her based on her sex and age.

32.     And while Mr. Nelson took away many responsibilities away from Ms. Wenze, he also relied on her for tasks a CFO was expected to handle, which he was unable to.

33.      For example, Ms. Wenze dealt with all of the corporate tax return, the company's 401K program, and even the employee stock ownership plan ("ESOP").

34.     Moreover, Ms. Wenze completed quarterly reports for HCMC—a responsibility Mr. Imparato would take on as the CFO before Mr. Nelson.

35.   Despite the age and gender discrimination Ms. Wenze faced, she performed incredibly well.

36.   For example, on her last Year End Financial Statement audit, there was not a single recommendation or suggestion of something to do differently—a very uncommon and impressive success.

37.   Over the course of 2017 and 2018, HCMC began terminating several long-term employees, including multiple employees in the accounting department.

38.   A disproportionate number of these employees were older women: Andrea Rose (who sued HCMC for gender discrimination), Kimberly Neufeld (60s) from the Sales Recruiter Department, and Dorcas Mendez (60s), an HCMC Executive Assistant.

39.   Ultimately, on July 20, 2018, Ms. Wenze, a woman in her 60s, joined this group when HCMC terminated her employment.

40.   In addition to the sex- and age-discrimination, HCMC fabricated performance issues to claim that Ms. Wenze was being fired "for cause," in an effort to avoid paying Ms. Wenze the agreed upon six-months' severance.

41.   HCMC accused Ms. Wenze of "unwillingness to abide by executive directives," "inappropriate and insubordinate conduct," and "general mismanagement" of her team in its written termination letter signed by Mr. Nelson.

42.   Neither Mr. Nelson, nor anyone else at HCMC had ever said anything of the like to Ms. Wenze before this, as these were completely untrue and entirely unsubstantiated allegations.

43.   None of the accusations were true.

44.     During her 10-year tenure at HCMC, Ms. Wenze was a dedicated employee who consistently fulfilled her job responsibilities and received no verbal or written warnings, discipline, write-ups, or the like.

45.     Ms. Wenze had never deviated from reporting requirements or GAAP, and HCMC never identified a single "material error" in a "critical report."

46.     In fact, in March 2018, Ms. Wenze received a gift basket from HCMC's CEO at the time for her good work and in April 2018, HCMC gave Ms. Wenze an excellent performance review, for which she received a bonus.

47.     Further, HCMC's assertion that Ms. Wenze violated policies by failing to obtain approval for paid time off and delegating electronic payment approval to an unauthorized subordinate are demonstrably false.

48.     Ms. Wenze always followed company policy.

49.     Under her previous CFO, Ms. Wenze submitted her request forms to Human Resources, as instructed.

50.     In June 2018, however, Mr. Nelson requested that Ms. Wenze carbon copy him when submitting her forms.

51.     Thereafter, Ms. Wenze carbon copied Mr. Nelson when requesting paid time off for July 19 and July 20, 2018.

52.     In sum, Ms. Wenze was an employee of ten years and received a positive review only a few months prior to her termination with no mention of any of these purported deficiencies.

53.     She never received any written or verbal warnings, nor was she given a performance improvement plan to address what HCMC only now claims are deficiencies so severe as to warrant termination for cause.

54.     HCMC fabricated these issues solely to avoid paying Ms. Wenze the agreed-upon severance.

55.     In reality, Ms. Wenze is owed the full amount of the negotiated severance Agreement, in addition to back and front pay for Defendants' violation of the EPA.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Gender Discrimination in Violation of the FLSA, as amended by the EPA

56.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 55 with the same force as though separately alleged herein.

57.     At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA.

58.     The FLSA, as amended by the EPA, prohibits an employer from discriminating against an employee on the basis of sex in the payment of wages for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

59.     Defendants paid Plaintiff less than male employees who performed equal work which required equal skill, effort, and responsibility and which was performed under similar working conditions.

60.     Defendants paid Plaintiff less than her male counterparts solely because of her sex; there was no legitimate reason for Defendants' pay disparity.

61.     As such, Defendants have violated the FLSA, as amended by the EPA.

62.     Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants her unpaid compensation, liquidated damages, and reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CAUSE OF ACTION
### Wrongful Termination in Violation of the NYCHRL

63.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 62 with the same force as though separately alleged herein.

64.     The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of age and sex.

65.     Defendants violated the NYCHRL when it terminated Plaintiff's employment, along with similarly aged females, based on her age and sex.

66.     As a direct and proximate consequence of Defendants' age and sex discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

67.     Defendants' discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Breach of Contract in Violation of the New York Common Law

68.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 67 with the same force as though separately alleged herein.

69.     Plaintiff and Defendants entered into a contract which contained provisions requiring Defendants to pay Ms. Wenze a specific severance amount.

70.     Defendants breached its contract with Plaintiff by willfully failing to pay Plaintiff in accordance with these provisions.

71.     By reason of its breach of contract, Defendants are liable to Plaintiff for an amount to be determined at trial, plus interest.

**FOURTH CAUSE OF ACTION**
**Breach of Good Faith and Fair Dealing in Violation of New York Common Law**

72.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 71 with the same force as though separately alleged herein.

73.      Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

74.     A party to a contract breaches these duties when his/her conduct frustrates the purpose of the contract, *e.g.*, by failing to perform the things necessary to carry out the purpose for which the contract was entered and to refrain from destroying or injuring the other party's right to receive the fruits of the contract.

75.     Such conduct is often described as bad faith, and is identified by, among other things, evasion of the spirit of the bargain, abuse of a power to specify terms, interference with or failure to cooperate in the other party's performance, and willful rendering of imperfect performance.

76.     Defendants breached their good faith and fair dealing with Plaintiff by fabricating reasons to terminate her employment for cause to avoid pay her owed severance.

77.     By reason of its breach of good faith and fair dealing, Defendants are liable to Plaintiff for the severance payment.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.  For the first cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

B.  For the second cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

C.  For the third cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action;

D.  For the fourth cause of action, economic loss, emotional distress damages, punitive damages, attorneys' fees and costs, and interest to be determined at the hearing of this action; and

E.  For such other and further relief as the Court deems just and proper.

Dated: New York, New York
        January 23, 2019

By:   /Edgar M. Rivera         
Walker G. Harman, Jr.
Edgar M. Rivera
THE HARMAN FIRM, LLP
381 Park Avenue South, Suite 1220
New York, NY 10016
T: (212) 425-2600
E: wharman@theharmanfirm.com
E: erivera@theharmanfirm.com

*Attorneys for Plaintiff*